UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSHUA T.,

                Plaintiff,

       v.                                      **DECISION AND ORDER**
                                                        19-CV-1355S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

      1.     Plaintiff Joshua T.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     This case has a long and protracted history. Plaintiff filed an application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Act on June 1, 2006. (R.[2] at 639-42.) (R. at 30, 79-83.) Plaintiff alleged disability beginning on February 1, 2002, due to major depression and anger control issues. (R. at 84-85.) Plaintiff's application was denied. His application for SSI was denied because he was financially ineligible. (R. at 642-51.) Plaintiff then requested a hearing on the denial of his DIB claim before an administrative law judge ("ALJ"). ALJ Timothy McGuan held a hearing on September 5, 2008, at which Plaintiff,

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

represented by his attorney, appeared and testified. (R. at 451-66.) ALJ McGuan rendered an unfavorable decision on December 19, 2008, and the Appeals Council denied Plaintiff's request for review on June 3, 2010. (R. at 919.) Plaintiff then filed a lawsuit on July 21, 2010. The District Court granted Plaintiff's motion for judgment on the pleadings, and remanded the matter for further administrative consideration of Plaintiff's poor attendance, limited work pace, PTSD, and anxiety disorder, and for proper consideration of the opinions of treating physician Dr. Ferraro in light of Plaintiff's negative interactions with him. (R. at 919.)

3.      On remand, a second hearing was conducted by ALJ McGuan, who rendered another unfavorable decision on June 29, 2012. (R. at 528-44.) The Appeals Council then issued a new remand order and directed the assignment of a new ALJ. The Appeals Council directed the new ALJ to further consider treating and non-treating source opinions, consider the opinions of Nurse Practitioner Vertino, further evaluate Plaintiff's mental impairments, including anxiety disorder and PTSD, further consider Plaintiff's RFC and give reasoning for the limitations assessed, obtain more psychological medical evidence if warranted, and obtain supplemental evidence from a vocational expert. (R. at 554-55.)

4.      On September 30, 2013, the new ALJ, David Lewandowski, held a hearing. (R. at 822-58.) On March 27, 2014, ALJ Lewandowski rendered an unfavorable decision. (R. at 493-509.) The Appeals Council denied Plaintiff's request for review of this decision, and Plaintiff filed another lawsuit on July 22, 2015. (R. at 922.)

5.      On August 31, 2017, the District Court granted Plaintiff's motion for judgment on the pleadings and remanded the matter for further proceedings. (R. at 915-

16.) The Court held that the ALJ had complied with its earlier orders but had erred by failing to properly assess the opinion of Dr. Gary Warner. (R. at 934-36.)

6.      The Appeals Council issued a Remand Order on July 17, 2018 and sent the claim back to the ALJ for further proceedings. (R. at 946.) A fourth hearing was held on June 6, 2019, by ALJ Mary Mattimore, at which Plaintiff appeared and was represented by counsel. (R. at 1030-80.) Vocational Expert Mary Everts also appeared and testified by telephone, as did a consulting psychiatrist hired by Plaintiff, Dr. Rita Clark. At the time of the hearing, Plaintiff was 44 years old, with a high-school education and some college, and prior work experience in retail sales, data entry, and shipping and receiving. (R. at 116-17, 121, 123, 893.)

7.      ALJ Mattimore considered the case de novo and, on July 26, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 878-896.) Plaintiff declined to appeal the ALJ's decision to the Appeals Council, and on September 25, 2019, the ALJ's decision became the final decision of the Commissioner, pursuant to 20 C.F.R. § 404.984(d). Plaintiff filed the current action on October 3, 2019, challenging the Commissioner's final decision.

8.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 14.) Plaintiff filed a response on August 11, 2020 (Docket No. 15), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

9.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y

of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

10.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

11.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

12.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

13.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by

considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

14.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between his alleged onset date of February 1, 2002, and his date last insured of March 31, 2007. (R. at 884.) At step two, the ALJ found that Plaintiff had the following severe impairments during the relevant period: generalized anxiety disorder, depressive disorder, personality disorder (passive-aggressive), malingering, post-traumatic stress disorder, passive aggressive personality and mood disorder. (Id.)

15.     At step three, the ALJ found that during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) and 416.920(c)). (R. at 885.)

16.     Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> [he] can perform simple routine work and make simple workplace decisions involving 1-2 steps, not at a production rate pace (defined as an assembly line pace); can maintain attention and concentration for two hour blocks of time; can tolerate minimal changes in workplace processes and settings; can tolerate occasional interaction with supervisors and less than occasional (20% or less in a day) interaction

6

with coworkers, and cannot perform tandem or team work;
can have no contact with the public.

(R. at 886.)

17.     At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (R. at 893.)  At step five, the ALJ found that, through the date last insured, there was a significant number of jobs in the national economy that Plaintiff could perform. (R. at 894.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between his alleged onset date of February 1, 2002, and his date last insured of March 31, 2007. (R. at 895.)

18.     Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because: (1) the ALJ erred in finding "malingering" to be a severe impairment; (2) the ALJ failed to follow prior District Court orders remanding Plaintiff's claim; (3) the ALJ failed to properly evaluate the opinion of consulting psychiatrist Dr. Rita Clark; and (4) the ALJ improperly substituted her "lay" judgment over any medical opinion. Separately, Plaintiff asks this Court to order Defendant to reopen his 2005 application for benefits. This Court finds only one of these arguments to be convincing, and remands on that basis alone. Nevertheless, it addresses Plaintiff's other arguments in an attempt to clarify matters in this long-running case.

19.     Plaintiff first argues that the ALJ erred finding malingering to be a severe impairment at step 2. Defendant argues the ALJ's determination is supported by substantial evidence.

20.     At step 2, an ALJ considers whether a claimant suffers from any severe impairments. For a claimant to be found disabled, an ALJ must find that a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520

(a)(4)(ii). A severe impairment is an "impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "[T]he standard for a severe impairment is not demanding," Kavanaugh v. Saul, No. 3:18-CV-01521 (MPS), 2020 WL 1181436, at *8 (D. Conn. Mar. 12, 2020), and is generally applied "solely to screen out *de minimis* claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).

21.    Malingering is not a traditional medical diagnosis, but rather a credibility assessment used by doctors to assess a patient's motivations.[3] Medical records indicating doctors' suspicions of malingering are properly considered by ALJ's in making their credibility determinations. Bruno v. Colvin, No. 2:15-CV-163, 2016 WL 3661243, at *3 (D. Vt. July 5, 2016) (finding it appropriate for ALJ to consider malingering in assessing plaintiff's credibility and determining the weight of the non-examining consultants' opinions where treating physicians noted "poss[ible] malingering," "poss[ible] ... malingering due to vagueness and volume of s[ymptom]s," and "malingering"). An assessment of malingering, as one part of a plaintiff's overall functioning, can cross the low bar set for a finding of a severe impairment. Ashley O. v. Saul, No. 19-CV-00578-LGF, 2021 WL 241965, at *4 (W.D.N.Y. Jan. 25, 2021) ("a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to

---

[3] "Malingering is falsification or profound exaggeration of illness (physical or mental) to gain external benefits such as avoiding work or responsibility, seeking drugs, avoiding trial (law), seeking attention, avoiding military services, leave from school, paid leave from a job, among others. It is not a psychiatric illness according to DSM-5 *(Diagnostic and Statistical Manual of Mental Diseases,* Fifth edition)." U. Alozai & P. McPherson, Malingering, (updated June 27, 2020), StatPearls Jan. 2021 (March 11, 2021), https://www.ncbi.nlm.nih.gov/books/NBK507837/https://www.ncbi.nlm.nih.gov/books/NBK507837/.

work") (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856). Thus, while the inclusion of malingering as a severe impairment was unusual, it is not improper.

22.    Further, the inclusion of malingering as factor in Plaintiff's functioning is supported by substantial evidence and was proper for the ALJ to consider.

23.    The record contains several doctors' opinions that at least part of Plaintiff's problems were attributable to "malingering."  Dr. Joshua Ferraro, a psychologist at the Veterans Administration, diagnosed Plaintiff with passive-aggressive personality disorder, but also noted that he was "compensation oriented," and noted "r/o malingering," meaning "rule out malingering." (R. at 889.) "'Rule-out' references a provisional diagnosis to be ruled out with further medical investigation." Luciano v. Comm'r of Soc. Sec., No. 1:19-CV-1137 (CJS), 2020 WL 5810010, at *6 (W.D.N.Y. Sept. 30, 2020) (citing Castro v. Comm'r of Soc. Sec., No. 15-CV-336 (MKB), 2016 WL 1274542, at *4 (E.D.N.Y. Mar. 31, 2016)). "In the medical context, a 'rule-out' diagnosis means there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out." Beach v. Comm'r of Soc. Sec., No. 11-CV-2089, 2012 WL 3135621, at *8 (S.D.N.Y. Aug. 2, 2012). Thus, Dr. Ferraro did not "diagnose" Plaintiff with malingering, but rather considered it a factor in trying to understand the nature of his mental impairments.

24.    Dr. Ferraro had a poor relationship with Plaintiff, but this does not necessarily mean his consideration of malingering as one possible factor was improper. The ALJ here gave Dr. Ferraro's opinion only reduced weight. Nevertheless, the ALJ was permitted to consider this mention of possible malingering as one factor in her analysis.

25.    Other evidence in the record also addresses the issue of Plaintiff's motivation. Dr. Sanjeev Ahuja, another VA treating provider, diagnosed Plaintiff with

generalized anxiety disorder, passive-aggressive personality disorder, and malingering on March 23, 2006, and November 9, 2006. (R. at 359-60.) Gregory Warner, PhD, a staff psychologist at the VA, administered multiple tests and met with Plaintiff on April 5, 2006. (R. at 375-8.) Dr. Warner found Plaintiff to have a mood and personality disorder. Warner believed the interaction of these disorders led Plaintiff to be "poorly motivated" for vocational rehabilitation. (R. at 378.) Dr. Warner also noted that Plaintiff "appear[ed] singularly interested in pursuing an unemployment rating" because it would take pressure off Plaintiff and "allow him to pursue his occupational goals at a pace and time that is more comfortable to him." (Id.) The ALJ gave Dr. Warner's opinion significant weight due to its basis in comprehensive testing and consistency with the medical record. (R. at 891.)

26.     Other practitioners differ on whether Plaintiff was malingering. Nurse Practitioner Kathleen Vertino considered that he was not a malingerer (R. at 404, 406). Social worker George McNally, 5 months later, considered that Plaintiff was a malingerer. (R. at 424, 427-28.)

27.     Plaintiff characterizes all of his issues as caused by his personality disorder and argues that any perceptions of malingering by medical sources were based on a failure to recognize his personality disorder, the providers' poor relationships with Plaintiff, or on a careless repetition of other diagnoses. These are all possible interpretations of the record. But the ALJ's finding—that Plaintiff *both* suffered from a personality disorder *and* was very focused on receiving a disability rating—is also a plausible interpretation of the record. And when the record is susceptible to several interpretations, a court must uphold the ALJ's reading. See Payne v. Colvin, No. 14-CV-584S, 2015 WL 5227454, at *1 (W.D.N.Y. Sept. 8, 2015) (citing Rutherford v. Schweiker, 685 F.2d 60, 62 (2d

Cir.1982), <u>cert denied</u>, 459 U.S. 1212, 103 S. Ct. 1207, 75 L. Ed. 2d 447 (1983) (where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld)). ALJ's finding of malingering is a reasonable interpretation of the medical record and is supported by substantial evidence, and therefore does not warrant remand.

28.     Plaintiff next argues that the ALJ failed to follow the instructions in prior District Court decisions ordering remand of his case. Specifically, he argues that in prior decisions, the court held that consideration of Dr. Ferraro's statement about "malingering" was improper given Dr. Ferraro's problematic relationship with Plaintiff, so that ALJ Mattimore's consideration of it here was error. But this argument is unconvincing. In its second remand order, the District Court addressed this very objection, and found that ALJ Lewandowski had complied with its earlier order, including its order that the ALJ read Dr. Ferraro's opinion in light of Plaintiff's altercation with Dr. Ferraro. (R. at 932-32.) Notably, the District Court did not find error in ALJ Lewandowski's finding of malingering, but only in his failure to properly consider the opinion of Dr. Warner. (R. at 934.)

29.     ALJ Mattimore considered Dr. Warner's opinion, as directed, and also found, as did ALJ Lewandowski, that malingering was an issue. In doing so, ALJ Mattimore neither disobeyed the district court nor impermissibly interpreted the record. The argument that the ALJ violated previous court orders is unavailing.

30.     Plaintiff next argues that the ALJ erred in failing to properly consider the opinion of Dr. Rita Clark. While this Court agrees with Defendant that the ALJ properly assigned little weight to Dr. Clark's opinion, it finds that the ALJ failed to consider evidence regarding Plaintiff's ability to tolerate contact with supervisors, which warrants remand.

31.     Dr. Clark performed a record review at Plaintiff's request and submitted a one-page opinion letter to the ALJ on Plaintiff's behalf. (R. at 1025.) In the letter, dated May 13, 2019, she opined that Plaintiff demonstrated many of the criteria in listing 12.08. She noted his "distrust of others, instability of relationships, attention seeking, feelings of inadequacy, need to be taken care of and aggressive behavioral outbursts." (Id.) She further opined that "he has severe problems interacting with others and adapting or managing himself." (Id., referring to two of the "B" criteria for listing 12.08.) As support for this opinion she cited only one piece of the record. Dr. Clark opined that Plaintiff could "possibly manage a work life if he were in total control such as having his own business. He could only tolerate very limited public contact and few interactions with colleagues." (Id.) Dr. Clark also testified at Plaintiff's hearing. There, without the record before her and with no citations to record evidence, she opined that Plaintiff could not tolerate supervisors.  (R. at 1077.)

32.     An ALJ must give the medical opinion of a plaintiff's treating source controlling weight "if it is well supported by medical findings and not inconsistent with other substantial record evidence." Hatcher v. Astrue, 802 F.Supp.2d 472, 476 (W.D.N.Y.2011) (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000) (alteration added)). However, only "acceptable" treating sources are entitled to this presumption of controlling weight. See SSR 96–2p. The opinions of "other" medical sources may be considered "with respect to [a plaintiff's] impairment and ability to work," but such opinions do not demand the same deference as those of a treating physician. Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008) (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir.1 983) ("the diagnosis of a nurse practitioner should not be given the extra weight

accorded a treating physician"). In determining the degree of weight to be given to the opinion of a nontreating source, an ALJ must consider: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) evidence supporting the opinion; (4) how consistent the opinion is with the record as a whole; (5) specialization in contrast to the condition being treated; and (6) other significant factors. 20 C.F.R. §404.1527(c).

33.    Here, the ALJ gave reduced weight to Dr. Clark's opinion. (R. at 890.) The ALJ found Dr. Clark's opinion of a "severe"—which the ALJ took to mean the statutory term "marked"—limitation in interacting with others to be consistent with the record. (R. at 890) However, the ALJ did not fully adopt Dr. Clark's testimony that Plaintiff was completely unable to accept supervision, due to evidence in the record that Plaintiff's greater problem was interacting with coworkers. (Id.)  The ALJ noted that Plaintiff had had conflicts with supervisors, but the ALJ considered that Plaintiff's employment issues arose from his intolerance for coworkers than from conflicts with supervisors. (Id.) Ultimately, the ALJ assigned an RFC with occasional interaction with supervisors, less than occasional (20% or less in a day) contact with coworkers and no contact with the public. (R. at 886.)

34.    While, as discussed below, this Court agrees that the ALJ's assessment of Plaintiff's relative ability to interact with supervisors and coworkers is not supported by substantial evidence, the ALJ was not obliged to give any particular weight to Dr. Clark's opinion. As a nontreating source, Dr. Clark's opinion was not entitled to controlling weight. The ALJ properly noted Dr. Clark's inability to cite any support for her propositions as a reason for giving it less weight. Although the ALJ did not cite to the other factors, this

Court notes that Dr. Clark had no treating relationship with Plaintiff and her opinion dates from over a decade after the relevant period. The ALJ did not err in not adopting Dr. Clark's opinion that Plaintiff was unable to tolerate any supervision.

35.     Plaintiff also suggests that the ALJ was obliged to adopt Dr. Clark's finding that Plaintiff met Listing 12.08 because hers was the only medical opinion to apply the current listing criteria to Plaintiff's case. But it is for the ALJ, not for any medical provider, to assess whether a claimant meets a listing. 20 C.F.R. § 404.1526 (e)(3) ("For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or Appeals Council.").

36.     Although this Court does not find error in how the ALJ assessed Dr. Clark's opinion, this Court does independently find that the ALJ's assessment that Plaintiff was "more limited" in interacting with customers and coworkers than with supervisors is unsupported by substantial evidence. In explaining her RFC of occasional interaction with supervisors, but less than occasional (20%) interaction with coworkers, and no contact with customers, the ALJ acknowledged that Plaintiff "has had considerable disputes with supervisors and coworkers and quit due to frustration," but stated that he could tolerate "occasional interaction with supervision as it appears [he] is most troubled by the public and his coworkers' work effort or lack thereof." (R. at 890.)

37.     This conclusion is not supported by substantial evidence. The record does not contain evidence that Plaintiff was *better* able to interact with supervisors, or those in authority positions, than he was with coworkers or members of the public. He was fired from past jobs because he could not work with other people, not only with coworkers. (R. at 1042-1053.) He stated to Dr. Conboy, a VA psychiatrist, that he was fired from his

longest term of employment because he was "unable to keep [his] mouth shut when [his] supervisors [were] idiots." (R. at 725.) He reported to Dr. Warner that he "had a difficult adjustment to military life, having problems with following orders that he felt were poorly thought out." (R. at 375.) Dr. Warner stated that over the course of 8 years of employment, Plaintiff "has had considerable dispute with supervisors and coworkers and quit four jobs due to such frustrations." (Id.)

38.      The record reveals Plaintiff's problems with many treatment providers, who can be perceived as authority figures. See Christian J. v. Comm'r of Soc. Sec., No. 6:18-CV-1004 (ATB), 2019 WL 6840130, at *7 (N.D.N.Y. Dec. 16, 2019) (finding harmless error in ALJ's failure to consider plaintiff's ability to interact with supervisors where psychiatric examinations were consistently normal, healthcare providers often observed plaintiff to be cooperative and pleasant, plaintiff regularly engaged in volunteer work, and plaintiff admitted that he has never had any problems getting along with his bosses, nor had he ever lost a job because of problems getting along with people).

39.      Plaintiff grew angry at social worker Brandi Page for "asking the wrong questions." (R. at 398.) When Dr. Ferraro attempted to counsel Plaintiff regarding an argument Plaintiff had had at a bar, Plaintiff "began raising his voice" and was eventually asked to leave the appointment. (R. at 362.)  Plaintiff reported that his primary physician, Dr. Sanjeev Ahuja, threw him out of his office. (Id.) Dr. Anselm George, a VA psychologist, noted that Plaintiff was often fired when he complained about coworkers not working as hard as he did. (R. at 344.) Plaintiff told Dr. George that "the world should not be organized this way and therefore he does not want to fit into society." (Id.) Dr. George noted, "I was

quite surprised by the blatant personality disorder on display during this meeting," and strongly recommended that no further appointments with Plaintiff be scheduled. (Id.)

40.     The ALJ noted that Plaintiff was able to establish rapport with some mental health providers and was capable of "superficial pleasantness and cooperation with medical providers." (R. at 888.) But the record also contains evidence of Plaintiff getting along with a few friends at different times. The fact that Plaintiff could—at times—be superficially pleasant with medical providers does not support the ALJ's determination that Plaintiff was *better* able to interact with supervisors than with coworkers or the public.

41.     The record certainly contains evidence of Plaintiff's complaints about coworkers and the world in general. But this Court does not find substantial evidence for the proposition that his interactions with supervisors would be less problematic than those with coworkers or the public. Remand is therefore warranted on this basis. On remand, the ALJ shall consider and explain the evidence of Plaintiff's interactions with supervisors in assessing the extent to which Plaintiff's social limitations impacted his ability to work.

42.     Plaintiff separately asks this Court to reopen an earlier application for DIB dated June 2, 2005. (Docket No. 12-1 at p. 32.) On remand, the ALJ shall address this issue and explain its reasoning for either reopening or refusing to reopen Plaintiff's earlier application.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      March 23, 2021
            Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
